UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VICTOR GAVILLAN-MARTINEZ,

Petitioner,

v. Case No. 3:18-cv-1031-MMH-MCR

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, et al.,

Respondents.

---

**ORDER**

**I. Status**

Petitioner Victor Gavillan-Martinez, an inmate of the Florida penal system, initiated this action on August 12, 2018,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Gavillan-Martinez is proceeding on a second amended petition (Amended Petition; Doc. 17). In the Amended Petition, Gavillan-Martinez challenges a 2013 state court (Duval County, Florida) judgment of conviction for second-degree murder and tampering with evidence. Gavillan-Martinez raises four grounds for relief. See Amended Petition at 6-16.[2] Respondents have submitted a memorandum in

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the page number assigned by the Court's electronic docketing system.

opposition to the Amended Petition. See Answer in Response to Order to Show Cause (Response; Doc. 18) with exhibits (Resp. Ex.).[3] Gavillan-Martinez filed a brief in reply. See Reply to Respondent's Answer to Order to Show Cause (Reply; Doc. 31). This action is ripe for review.

**II. Relevant Procedural History**

On August 26, 2013, Gavillan-Martinez entered a negotiated plea of guilty to second-degree murder (count one) and tampering with evidence (count two). Resp. Ex. A2 at 49-50. That same day, pursuant to the plea agreement, the circuit court sentenced Gavillan-Martinez to a term of incarceration of twenty-eight years as to count one and five years in prison as to count two. Id. at 51-57, 61-74. The circuit court ordered the sentence imposed on count two to run concurrently with the sentence imposed on count one. Id. Gavillan-Martinez did not appeal.

On April 18, 2014, Gavillan-Martinez filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. A1 at 6-13. In the Rule 3.850 Motion, he argued that his counsel was deficient for failing to advise him of the possibility of

[3] On August 13, 2019, Gavillan-Martinez filed a motion to supplement the record, in which he contended that Respondents' exhibits were not numbered and were incomplete. Doc. 21. After Respondents responded and attached corrected copies of their exhibits, the Court granted the motion to supplement on September 11, 2019. Doc. 25. Accordingly, when the Court references Respondents' exhibits A1 and A2, it refers to those attached to Respondents' September 6, 2019 response to the motion to supplement. See Docs. 24-1; 24-2.

raising a stand your ground defense. Id. On December 18, 2014, Gavillan-Martinez supplemented his Rule 3.850 Motion with two additional claims; he asserted that he was not given the opportunity to have a grand jury indict him and the cumulative errors in his case prejudiced him. Id. at 15-22. Gavillan-Martinez later amended his Rule 3.850 Motion on June 8, 2015 (Amended Rule 3.850 Motion). Id. at 43-67. In the Amended Rule 3.850 Motion, he argued that his counsel was ineffective for failing to: (1) file a motion to dismiss count one; (2) file a motion to suppress evidence; and (3) advise him concerning the statutory maximum sentence he faced if he rejected the plea deal. Id. Gavillan-Martinez amended his motion again (Second Amended Rule 3.850 Motion) on September 23, 2015, raising the same claims previously brought in the Amended Rule 3.850 Motion. Id. at 82-106. Gavillan-Martinez supplemented the Second Amended Rule 3.850 Motion with one additional claim, that his counsel was deficient for failing to request a presentence investigation (PSI) report. Id. at 124-26. Following an evidentiary hearing, the circuit court denied relief. Id. at 150-54. On March 6, 2018, Florida's First District Court of Appeal (First DCA) per curiam affirmed the denial of relief without a written opinion and issued the Mandate on December 5, 2018. Resp. Ex. E.

**III. One-Year Limitations Period**

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Gavillan-Martinez's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir.

2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

> courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

**B. Exhaustion/Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–

[5] Coleman v. Thompson, 501 U.S. 722 (1991).

> 748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied

[6] Wainwright v. Sykes, 433 U.S. 72 (1977).
[7] Murray v. Carrier, 477 U.S. 478 (1986).

> fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting

Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

**C. Ineffective Assistance of Trial Counsel**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."

> Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially

> higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Gavillan-Martinez alleges his counsel was ineffective for failing to advise him that he was entitled to request a pre-trial hearing to establish his immunity from prosecution under Florida's "Stand Your Ground Law." Amended Petition at 6-9. He argues that he hit the victim with a wrench because the victim tried to stab him with a knife when Gavillan-Martinez informed the victim he would have to leave Gavillan-Martinez's residence. Id.

But for counsel's failure to properly advise him, Gavillan-Martinez contends he would not have entered a guilty plea. Id.

Gavillan-Martinez alleged a similar claim in his Second Amended Rule 3.850 Motion. Resp. Ex. A1 at 85-90. After an evidentiary hearing, the circuit court denied relief on this claim, explaining:

> The testimony of trial counsel at the evidentiary hearing was that after discussing the case with the Defendant and weighing the options regarding filing a "Stand Your Ground" Motion, a strategic decision was made not to file the Motion. The Defendant's statement to police did not support the Motion and he would then be subjected to cross examination which would provide the prosecution with more statements from which to impeach the Defendant. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct. Schoenwetter v. State, 46 So. 3d 535, 553 (Fla. 2010) (citing Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000)).

Id. at 152. The First DCA per curiam affirmed the denial of relief without issuing a written opinion. Resp. Ex. E.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record

---

[8] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gavillan-Martinez is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground One is without merit. "A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007). A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court). By entering a guilty plea in Florida, a defendant waives any right to have his or her counsel investigate or put forward a defense. Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) (citing Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later

attack counsel's effectiveness for failure to investigate or defend the charge."
Id.

Here, the arrest and booking report reflects that when law enforcement initially contacted Gavillan-Martinez, he claimed that the victim left his residence early in the morning to buy drugs but never returned. Resp. Ex. A2 at 13. After further investigation, law enforcement attempted to interview Gavillan-Martinez, but he invoked his right to remain silent. Id. However, the woman who lived with Gavillan-Martinez, Erica Roach, told law enforcement that Gavillan-Martinez was upset with the victim because the victim sent her explicit text messages. Id. According to Roach, Gavillan-Martinez then went to the victim's room to confront him, after which Gavillan-Martinez returned to Roach with blood on his body and the victim lying dead in the bedroom. Id. Roach stated that she and Gavillan-Martinez then disposed of the body and evidence. Id. Notably, during the colloquy for his guilty plea, Gavillan-Martinez admitted he was guilty of both counts. Id. at 71. He also stated, under oath, that he was satisfied with his attorney's representation. Id.

During the evidentiary hearing on the Second Amended Rule 3.850 Motion, both Gavillan-Martinez and his trial counsel, Senovia Portis, testified. Resp. Ex. A1 at 155-229. Gavillan-Martinez testified in conformance with the allegations in the Amended Petition. Id. at 209-21. Portis, on the other hand, denied she told Gavillan-Martinez he was not entitled to a Stand Your Ground

hearing and further testified that she and Gavillan-Martinez discussed a Stand Your Ground defense. Id. at 172-78, 190-93. According to Portis, during the discussion, she informed Gavillan-Martinez that he could have a pre-trial hearing on the matter, but it would require him to testify and face cross-examination, as well as allow the prosecutor the opportunity to present evidence after the fact that would go towards his consciousness of guilt. Id. at 172-75. Moreover, she advised Gavillan-Martinez that the prosecutor would question him concerning his initial denial of knowing anything about what happened to the victim. Id. at 175-77. Portis believed the circuit court could have viewed the inconsistencies in his story in a negative light such that his credibility would be hurt. Id. at 177. According to Portis, Gavillan-Martinez made the decision not to pursue a Stand Your Ground defense after he heard her advice. Id. at 177-78.

In federal habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 28 U.S.C.A. § 2254(e)(1). Here, the circuit court made a factual finding that Portis advised Gavillan-Martinez of the pros and cons of pursuing a pre-trial Stand Your Ground hearing and that he personally made the decision to forego that hearing and enter a guilty plea. The record supports this factual finding and Gavillan-Martinez has not presented clear and convincing

evidence to overcome the presumption of correctness of this factual determination. Accordingly, as Portis' testimony refutes Gavillan-Martinez's allegations in the Amended Petition, relief on the claim in Ground One is due to be denied.

**B. Grounds Two and Three**

As Ground Two, Gavillan-Martinez argues that his attorney was ineffective because she failed to file a motion to suppress evidence obtained without a warrant. Amended Petition at 11-12. Gavillan-Martinez contends that he had a one-year lease in effect during the period in which law enforcement searched the mobile home and he did not abandon the residence. Id. In Ground Three, Gavillan-Martinez argues that his counsel "failed to investigate the alleged eviction process initiated against the Petitioner and consequently provided untruthful testimony at the evidentiary held on August 17, 2016. Id. at 14. According to Gavillan-Martinez, no eviction case had been initiated in the circuit court and had counsel known this information, it would have supported a meritorious motion to suppress. Id. He maintains that had counsel filed a motion to suppress and investigated whether he was evicted, he would not have entered the guilty plea. Id. at 11-12, 14.

Gavillan-Martinez raised both of these issues in ground two of his Second Amended Rule 3.850 Motion. Resp. Ex. A1 at 91-98. In denying relief, the circuit court found: "As to ground two, [counsel] testified at the time of the

search of the Defendant's trailer he was no longer residing there. Therefore, she had no standing to file a motion to suppress." Id. at 153. The First DCA per curiam affirmed the denial of relief without a written opinion. Resp. Ex. E.

To the extent that the First DCA decided the claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gavillan-Martinez is not entitled to relief on the basis of these claims.

Nevertheless, even if the First DCA's adjudication of these claims is not entitled to deference, the claims in Ground Two and Three fail. The arrest and booking report reflects that law enforcement contacted the mobile home park manager who advised them that Gavillan-Martinez and his roommate moved out of the trailer "because they were going to be evicted." Resp. Ex. A2 at 13. As Gavillan-Martinez moved out prior to eviction proceedings beginning, checking the local court docket for eviction proceedings would have been useless. Due to the fact he moved out and the mobile home park manager gave permission to search the property, there was no need for law enforcement to

obtain a warrant. Indeed, at the evidentiary hearing, counsel testified that she came to the same conclusion after reviewing the evidence. Resp. Ex. A1 at 182. Accordingly, had counsel filed a motion to suppress on the grounds of a warrantless search it would not have been successful. Counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Notably, counsel also testified that Gavillan-Martinez never requested that she file a motion to suppress. Resp. Ex. A1 at 182. On this record, relief on the claims in Grounds Two and Three is due to be denied.

## C. Ground Four

Lastly, Gavillan-Martinez asserts that his counsel provided deficient performance when she failed to investigate his mental competency at the time of the incident and when he entered his guilty plea. Amended Petition at 15-16. According to Gavillan-Martinez, his counsel was aware he suffered from "mental illness" and he was unable to effectively communicate with counsel or understand the proceedings. Id. at 16. He also maintains that he was insane both at the time of the incident and incompetent to proceed with the prosecution. Id. Gavillan-Martinez alleges that he previously tried to commit

suicide and suffered from delusions, depression, and remorse over what happened to the victim. Id. at 17.

In response, Respondents argue that Gavillan-Martinez failed to exhaust this claim because he did not seek review of the denial of this claim on appeal. Response at 41-44. Gavillan-Martinez contends that his failure to exhaust should be excused pursuant to Martinez v. Ryan. Reply at 10-11. The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if it "has some merit." Martinez, 566 U.S. at 14. For purposes of determining whether postconviction counsel was ineffective, a

petitioner "must show more than the mere fact they failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims." Hittson v. GDCP Warden, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original).

In order to determine whether this claim is a substantial one, a review of the record is necessary. Roach, Gavillan-Martinez's roommate, told law enforcement that Gavillan-Martinez became upset when he found out the victim, who was temporarily living with them, sent Roach a text message concerning oral sex from Gavillan-Martinez's phone. Resp. Ex. A2 at 13. Gavillan-Martinez told her that he was going to confront the victim about it, at which point he went to the victim's bedroom. When Gavillan-Martinez returned to Roach, he was covered in blood and the victim was dead. Id. According to Roach, she and Gavillan-Martinez dumped the victim's body in a river, burned the mattress on which the victim had died, cleaned the mobile home, and painted the room to conceal the murder. Id. Gavillan-Martinez's actions do not suggest that he was suffering from a mental illness at the time of the murder. Indeed, he took greats steps to conceal the murder, which shows he understood what he had done - murdered someone - and that the potential consequences he faced were substantial. See Gray v. State, 731 So. 2d 816, 817 (Fla. 5th DCA 1999) (explaining that the insanity defense "requires that the defendant, at the time of the offense, had a mental infirmity, disease or defect

and that, because of such condition, he did not know what he was doing or the consequences of what he was doing or, if he knew, he did not know that what he was doing was wrong.”).

Notably, counsel’s personal notes of the case, which were introduced during the evidentiary hearing, do not reflect anything regarding Gavillan-Martinez’s mental health. Resp. Exs. A1 at 231-279; A2 at 1-48. In fact, counsel’s notes include a homicide interview conducted by a Public Defender investigator, which reflects that Gavillan-Martinez did not disclose any mental health issues. Resp. Ex. A2 at 8. The notes reflect that Gavillan-Martinez provided detailed background information and cooperated with her investigation. Based on counsel’s records, Gavillan-Martinez comprehended the charges against him, the gravity of the situation, and communicated well with his attorney. See Hernandez-Alberto v. State, 126 So. 3d 193, 204 (Fla. 2013) (quoting Hardy v. State, 716 So. 2d 761, 763 (Fla. 1998)) (“The criteria for determining competence to proceed is whether a prisoner ‘has sufficient present ability to consult with counsel with a reasonable degree of rational understanding-and whether he has a rational as well as a factual understanding of the pending [. . .] proceedings.’”). Likewise, during the plea colloquy, Gavillan-Martinez appeared to understand the proceedings and the potential consequences. Id. at 61-74. Throughout the hearing, he answered

questions in a cogent and competent manner. Id. Indeed, he even stated, under oath, that he had no difficulty understanding the judge. Id. at 69.

Based on this record, there is no support for Gavillan-Martinez's contentions that he was insane at the time of the crime or incompetent to proceed. Critically, he has not provided any evidence to support this claim. As such, there is no evidence that an insanity defense or mental incompetency claim would have had any merit whatsoever. Counsel is not deficient for failing to raise meritless arguments. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, the Court finds that Gavillan-Martinez's guilty plea was not involuntary. Therefore, this claim is not a substantial claim such that Martinez would excuse his failure to exhaust this claim. For the above stated reasons, relief on the claim in Ground Four is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Gavillan-Martinez seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Gavillan-Martinez "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S.

274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 17) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Gavillan-Martinez appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of April, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C: Victor Gavillan-Martinez #135908
Counsel of record